IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:07-CV-485-DCK

| | |
|---|---|
| **MARC HUBBARD**, individually, and **SPORTS DIMENSIONS, INC.**, d/b/a CLUB DEEP, <br><br>      **Plaintiffs,**<br><br>  vs.<br><br>**THE CHARLOTTE-MECKLENBURG POLICE DEPARTMENT;**<br><br>**THE CITY OF CHARLOTTE,** a North Carolina Municipality;<br><br>**DETECTIVE MIKE BARRON,** Individually and Officially, as an Officer for the Charlotte-Mecklenburg Police Department;<br><br>**OFFICER TERRY MACK,** Individually and Officially, as an Officer for the Charlotte-Mecklenburg Police Department;<br><br>**OFFICER MIKE SMATHERS,** Individually and Officially, as an Officer for the Charlotte-Mecklenburg Police Department;<br><br>**MAJOR EDDIE LEVINS,** Individually and Officially, as an Officer for the Charlotte-Mecklenburg Police Department;<br><br>      **Defendants.** | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendant City of Charlotte's "Second (Supplemental) Motion For Summary Judgment" (Document No. 37) filed June 1, 2010; "Defendants Barron, Mack, Smathers, and Levins' Second Motion For Summary Judgment"

(Document No. 38) filed June 1, 2010; "Plaintiff's Brief In Opposition To Defendants' Second Motion For Summary Judgment" (Document No. 57) filed June 15, 2010; "Defendant City of Charlotte's Reply In Support Of Motion For Summary Judgment" (Document No. 58) filed June 25, 2010 and "Defendants Smathers, Levins, Mack And Barron Brief In Response To The Plaintiff's Opposition Of The Defendant's Second Motion For Summary Judgment" (Document No. 59) filed June 25, 2010. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and the motions are ripe for disposition.

Having carefully considered the papers, the record, and applicable authority, the undersigned will <u>grant</u> Defendants' motions for summary judgment as to Plaintiffs' federal claims, and dismiss without prejudice and remand the state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Marc Hubbard ("Hubbard" or "Plaintiff") and Sports Dimensions, Inc. ("SDI" or collectively with Hubbard, "Plaintiffs") originally filed this action in the Superior Court of Mecklenburg County on October 12, 2007. Named defendants are the Charlotte-Mecklenburg Police Department ("CMPD"), the City of Charlotte (the "City"), and four individual officers of the Charlotte-Mecklenburg Police Department ("CMPD Defendants" or all together, "Defendants"). Defendants removed the action to this Court on November 16, 2007.

On July 29, 2009 and August 3, 2009, Defendants filed their first motions for summary judgment. (Document Nos. 22 and 23). After careful review, the undersigned denied the first motions for summary judgment, without prejudice to re-file, on March 29, 2010, finding them inadequate in certain important aspects. (Document No. 34). The now pending second motions for

---

[1] The factual background is related in the light most favorable to Plaintiffs, the non-moving parties. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

2

summary judgment (Document Nos. 37 and 38) were filed on June 1, 2010, and are now ripe for disposition.

Plaintiffs' Complaint contains factual allegations purportedly supporting seven counts of violations by one or more of the Defendants, against Hubbard and/or SDI. (Document No. 1, pp.19-25; Document No. 26, pp.2-3). Specifically, those counts include: 1) violations of Hubbard's 4th and 14th Amendment rights, pursuant to 42 U.S.C. § 1983, to be free from an illegal search and seizure; 2) violations of Hubbard's due process rights pursuant to the 5th and 14th Amendments and 42 U.S.C. § 1983; 3) false arrest of Hubbard by Defendant Barron; 4) false imprisonment of Hubbard by Defendant Barron; 5) assault and battery by Defendant Barron in handcuffing Hubbard; 6) malicious prosecution of Hubbard by Defendants Mack and Barron; and 7) conversion of Hubbard's property by Defendants Barron and Smathers in the approximate amount of $14,000.00. In support of these counts, Plaintiffs' wide-ranging Complaint contains allegations of fact describing incidents involving Hubbard and Charlotte-Mecklenburg police officers in 2002, 2004, and 2005. (Document No. 1, pp.5-19).

**A. 2002 Allegations**

The Complaint first addresses events concerning the Plaintiffs' operation of a nightclub in February 2002. (Document No. 1, ¶¶ 14-16). However, Plaintiffs now concede that any alleged violations of civil rights that took place prior to April 13, 2002, are barred by the statute of limitations. (Document No. 57, p.3).

The next matter complained of involves an alleged incident in May 2002. (Document No. 1, ¶¶ 17-20). On or about May 5, 2002, Defendant Terry Mack ("Mack") visited the club at 407 Eastway Drive, and after conferring with Hubbard, cited him for dance hall ordinance violations.

3

According to Plaintiff, charges related to this incident were later dismissed in Mecklenburg County District Court. Id.

## B. 2004 Allegations

Plaintiffs' Complaint also includes multiple allegations regarding incidents in 2004 that purportedly violated Plaintiffs' rights: (1) An unidentified officer reported to ABC officials that Plaintiff Hubbard had intentionally tried to disclose his identity by saying his name was Phil Jant; (2) Defendant Mike Barron ("Barron") approached several neighboring businesses and asked them to oppose Plaintiff's application to the ABC Commission and allegedly mischaracterized Plaintiff and his business; (3) Defendant Eddie Levins ("Levins") informed Hubbard that it was illegal to rent the club to a nonprofit organization to do a fundraiser, and Phil Jant was later charged with selling alcohol without a permit; (4) On or about April 24-25, 2004, Plaintiff rented the club to a promoter and CMPD informed Hubbard that if the club opened for the promoter, Hubbard would be arrested for operating a dance hall without a permit; (5) On or about September 30, 2004, Charlotte-Mecklenburg Police Department officers searched Hubbard's establishment, its patrons and their vehicles, and later arrested a bartender and door person on charges of selling alcohol to a minor and aiding and abetting underage drinking; and finally (6) On or about October 6, 2004, Plaintiff's ABC permit was suspended for alleged violations. (Document No. 1, ¶¶ 21-28, 39).

## C. 2005 Allegations

Plaintiffs' seven counts of violations outlined in their Complaint focus on events in late January 2005. (Document No. 1, pp.19-25). Although Plaintiffs' Complaint, as discussed above identifies various other actions, it is clear from the claims asserted in the Complaint, as well as from the motions and their responses, that the true crux of Plaintiffs' timely § 1983 claims involve events that allegedly occurred on or about January 22, 2005. (Document No. 1, ¶¶ 30-38). Specifically,

4

Plaintiffs' response to the second motions for summary judgment only contends there are genuine issues of fact regarding Hubbard's claims "relating to the events of January 22, 2005." (Document No. 57, p.10). Therefore, the timely § 1983 claims subject to this Order involve the events surrounding that date.

Viewed in the light most favorable to Plaintiffs, the Complaint alleges that the search, seizure, and arrest at Club Deep at 421 East Sugar Creek Road, Charlotte, North Carolina, on January 22, 2005, were unreasonable and unlawful, and that Hubbard was deprived of his due process rights in violation of the Fourth, Fifth, and Fourteenth Amendments because his arrest was not supported by probable cause. The Complaint alleges that Defendant Barron had "direct knowledge of Plaintiff Hubbard's lawful operation of business" and yet applied for and obtained a search warrant on or about that date. (Document No. 1, ¶ 33). Plaintiffs further contend that Defendants Barron and Mike Smathers ("Smathers") unlawfully: arrested Hubbard for violations of the city's dance hall ordinance and for selling alcoholic beverages without a permit; removed Hubbard, his staff and patrons from the building; and seized in excess of $14,000.00 from Hubbard's cash register. (Document No. 1 at ¶¶ 34, 36-37).

Plaintiffs do not claim in the Complaint, or in their opposition to summary judgment, to have obtained proper permits pursuant to N.C.G.S. 18B-100 *et seq*, North Carolina's provisions for the regulation of the sale, purchase, transportation, manufacture, consumption, and possession of alcoholic beverages, or Article III, § 6-251 *et seq* of Charlotte's Code of Ordinances regulating dance hall businesses. Instead, Plaintiffs argue that Defendants knew, or should have known, that Plaintiffs were not subject to the local dance hall ordinance, and therefore lacked probable cause for their actions. (Document No. 57, p.6). Plaintiffs specifically contend that because charges for

5

violation of the dance hall ordinance against Hubbard had been dismissed in 2002, these Defendants were put on notice that Hubbard was not subject to the dance hall ordinance. Id.

According to the affidavit of Mike Barron, on January 22, 2005: Charlotte-Mecklenburg Police Department officers observed Club Deep open and people go in the building; undercover officers paid $40.00 to enter, where they observed space for dancing and heard music; Officer Barron proceeded to the Magistrate's Office and obtained a search warrant for Club Deep; undercover officers in Club Deep were served alcohol; upon arriving at the scene, Barron approached Hubbard and read him the search warrant; Hubbard admitted to not having an ABC or dance hall permit; and Hubbard was subsequently arrested for violations of the dance hall ordinance and received two citations for alcohol violations. (Document No. 23-2, pp.19-20). Barron's incident report (Document No. 23-2, pp. 28-30) is a more detailed version of his affidavit testimony and is consistent with his affidavit.

The facts as alleged by Plaintiffs only differ significantly from Barron's version of the events in the additional description of a purported telephone conversation between Barron and Chief Legal Counsel for the North Carolina ABC Commission, Fred Gregory, on January 21, 2005, and in the amount of cash alleged to have been seized. (Document No. 26, pp.5-6). According to Plaintiffs, Barron was given notice by Gregory that Hubbard "was under the regulation of N.C.G.S. § 18B-902(b)." Id. Plaintiffs further contend that "[b]y way of the conversation with Gregory, Defendant Barron had actual knowledge that Plaintiff's establishment was excluded under the City of Charlotte's Dance Hall Ordinance, Article 11, Section 6-157." Id.

It is uncontroverted that following his January 22, 2005 arrest: (1) Magistrate Proctor found that Hubbard was justifiably detained because there was probable cause to believe he had operated a dance hall without a required permit; and (2) Hubbard, represented by counsel, was subsequently

6

convicted in Mecklenburg County District Court for two violations of ABC laws and one violation of the city's dance hall ordinance. (Document No. 23-3, pp.69-72; Document No. 37-5, p.1).

Ultimately, the convictions were appealed to Superior Court, where Hubbard, purportedly under a plea agreement, pled guilty to one ABC violation and the other charges were dismissed. Id. Hubbard now contends that the dance hall ordinance conviction "was not dropped as part of a plea bargain." (Document No. 57-6, p.2). However, in an earlier deposition when he was asked, "...you pleaded guilty to one count, and the other two counts were dropped as a result?" Hubbard replied, "That's correct." (Document No. 22-5, p.3). The dismissal forms themselves indicate that two of the charges against Hubbard were dropped because he agreed to plead guilty to a third charge – possession of alcoholic beverages for sale without a permit. (Document No. 43, pp.2-4).

Plaintiffs additionally contend that Barron and Smathers confiscated in excess of $14,000 in cash from the evening's door receipts. (Document No. 1, ¶62, Document No. 26, pp.6-7). Barron and Smathers have denied in sworn affidavits (Document No. 23-2, pp.21, 44) stealing, converting, or appropriating any money or property of Plaintiffs. Exhibit L to the Complaint provides a copy of the "Inventory Of Seized Property" and lists a total of about $2300.00 seized, in addition to 22 cases of beer, flyers, and contracts. Hubbard's own deposition testimony provides that he did not see a police officer take any money and that he does not know anyone else who did. (Document No. 23-3, p.61). Hubbard also admitted that a girl, whom he did not hire, and whose name he does not know, was handling the money that night. (Document No. 23-3, p.63). Finally, the "Promotional Agreement" seized by the police and executed by Hubbard for Club Deep, indicates that Executive Entertainment and/or Paperchase Entertainment were the promoters of the event and that the promoter will keep 100% of door receipts - casting doubt on whether Plaintiffs even have standing to allege the loss of door receipts.

7

Even viewing these facts in the light most favorable to them, the undersigned does not find that Plaintiffs have forecast such evidence that a reasonable jury could return a favorable verdict on the federal claims asserted in the Complaint.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C. 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party; that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

8

## III. DISCUSSION

After careful review of this matter, the undersigned concludes that there are no genuine issues of material fact as to Plaintiffs' § 1983 claims, and therefore, summary judgment is proper on those counts. In short, Plaintiffs have failed to convince the Court that there is evidence such that a reasonable jury could return a verdict in their favor. Credible evidence, including affidavits filed in this action, support Defendants' actions as appropriate and lawful. There does not appear to be any genuine dispute as to the conduct by Barron and the other officers which forms the basis of the instant suit; rather, the dispute boiled down is whether the officers' conduct was objectively reasonable. This presents questions of law, not fact. See Cloaninger v. McDevitt, 555 F.3d 324, 333 (4th Cir. 2009). Defendants' motions for summary judgment as to the § 1983 claims will therefore be granted.

### A. Statute of Limitations

It appears the statute of limitations has run on Plaintiffs' claims stemming from any alleged 2002 incidents. As noted above, the instant lawsuit was filed in Mecklenburg County Superior Court on October 12, 2007, case number 07-CVS-20617, and then removed to this Court on November 16, 2007. A previous action that had commenced against the same Defendants on April 13, 2005, and later was voluntarily dismissed without prejudice on October 16, 2006, was timely renewed pursuant to N.C.R.Civ.P. 41(a)(1) within one year.

Although there is no federal statute of limitations for § 1983 claims, courts since Wilson v. Garcia, 471 U.S. 261 (1985) have held that the state statute governing personal injury actions provides the applicable limitations period. Pelzer v. Cherry, 3:09-CV-467-MU, 2009 WL 4611455 at *1 (W.D.N.C. 2009); see also, Webb v. North Carolina Dept. Of Crime Control and Public Safety, 658 F.Supp.2d 700, 712-13 (E.D.N.C. 2009); National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991). "In North Carolina a three year statute of limitations applies to any

personal injury not covered by another limitation . . . Because over three years lapsed between the time the alleged acts occurred and the time Plaintiff filed this lawsuit, his claims are untimely and his Complaint is dismissed." Id. (citing N.C.G.S. § 1-52(5)).  To the extent Plaintiffs' claims are based on alleged violations occurring in early 2002, more than three years passed before the filing of the first Complaint and thus those claims are untimely.  Furthermore, the parties now agree that any alleged violations prior to April 13, 2002, are barred by the statute of limitations.  (Document No. 37-1, p.8; Document No. 57, p.3; and Document No. 59, p.2).

**B. Claims of Violations of Civil Rights Pursuant to 42 U.S.C. § 1983**

    **1. Charlotte-Mecklenburg Police Department and City of Charlotte**

Plaintiffs allege that the actions of Defendants Barron, Mack, Smathers and Levins "are imputed jointly and severally to Defendants COC and CMPD, who are responsible under the doctrine of *respondeat superior*, as well as common law principals of agency."  (Document No. 1, ¶ 10). Plaintiffs' failure to establish a constitutional injury - that is, a failure to establish a genuine issue of fact on the underlying § 1983 action -  is fatal to the claims against the City and CMPD.  Bell v. Dawson, 144 F.Supp.2d 454, 463 (W.D.N.C. 2001); see also Case v. Stewart, 3:03-CV-388, 2007 WL 37741 at *5 (W.D.N.C. Jan. 4, 2007).

First, Defendants have argued, and Plaintiffs have failed to refute, that the Charlotte-Mecklenburg Police Department ("CMPD") is a department of the City of Charlotte (the "City") and not an entity capable of being sued.  (Document No. 22, p.1).  Next, Plaintiffs' contention that the City is liable under § 1983 amounts to a brief conclusory allegation in the Complaint that claims the City and CMPD "adopted a policy and pattern of practice where its officers would subject Plaintiff to clearly established constitutional violation."  (Document No.1, ¶58).   Plaintiffs, however, have failed to identify any City policy or custom that caused a constitutional violation, or other deprivation

10

of Plaintiffs' rights. See Bell, 144 F.Supp.2d at 463; see also Torchinsky v. Siwinski, 942 F.2d 257, 259 (4th Cir. 1991)(Plaintiffs cannot recover under § 1983 against municipal employer where they fail to prove that a policy or custom of the municipality caused the alleged deprivation of their rights). To the contrary, Plaintiffs' claims, briefs, and exhibits fail to support a single constitutional violation, much less a policy, pattern, or custom of subjecting Plaintiff(s) to unconstitutional treatment.

"Assuming arguendo that [Plaintiffs] suffered a deprivation of [] federal rights, it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). The claims against the City rely on the doctrine of *respondeat superior,* which is not a viable theory here - "no municipality can 'be held liable under § 1983 on a *respondeat superior* theory.'" Carter, 164 F.3d at 218 (quoting Monell, 436 U.S. 691).

> Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.

Riddick v. School Bd. City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Accordingly, the Court will grant Defendants' motions for summary judgment as to Plaintiffs' § 1983 claims against the City of Charlotte and the Charlotte-Mecklenburg Police Department.

## 2. Charlotte-Mecklenburg Police Officers

Taken in the light most favorable to them, Plaintiffs' Complaint alleges that Defendant Charlotte-Mecklenburg Police Department Officers Barron, Mack, Smathers and Levins ("CMPD Defendants") violated Plaintiffs' rights pursuant to § 1983, both in their official and individual capacities. (Document No. 1, ¶¶ 6-10, 50-66).

### a. Official Capacity

This Court recently discussed the difference between official and individual capacity suits under § 1983 in Dillard v. Fox, 2:08cv016, 2009 WL 88879 (W.D.N.C. Jan. 12, 2009).

> In Kentucky v. Graham, 473 U.S. 159 (1985), the Court sought to eliminate lingering confusion about the distinction between personal - and official - capacity suits. We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id., at 165 (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55,(1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166. . . . Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, supra, at 166 (quoting Monell, supra, 436 U.S., at 694). For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. 473 U.S., at 167.

Dillard, 2009 WL 88879 at *3 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). Therefore, to the extent Plaintiffs' claims are brought against the CMPD Defendants in their official capacities and the City of Charlotte, summary judgment will be granted to the individual CMPD Defendants in their official capacities. See Harrell v. Gastonia, 3:07cv396, 2008 WL 2139619 at *6 (W.D.N.C. May 20, 2008).

### b. Individual Capacity

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id., at 166. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. Id., at 166-167.

Dillard, 2009 WL 88879 at *3 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).

To the extent the claims are against the CMPD Defendants in their individual capacities, Defendants are entitled to qualified immunity. "A government official is entitled to qualified immunity from civil liability when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" White v. Smereka, 3:09-cv-257, 2010 WL 2465552 at *3 (W.D.N.C. June 14, 2010) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The undersigned is convinced by the evidence in the record that the Defendant officers' actions and conduct on January 22, 2005, were supported by sufficient probable cause, and therefore those Defendants are entitled to qualified immunity as to the § 1983 claims against them. "Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." Cloaninger v. McDevitt, 555 F.3d 324, 330 (4th Cir. 2009).

The Fourth Circuit has stated,

> The basic rules of § 1983 immunity are well known. Underlying the doctrine is a desire to avoid overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability. The concerns behind the immunity defense are especially salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing

> circumstances. The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights.
>
> The reasonableness inquiry is an objective one. To gauge objective reasonableness, a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances. Subjective factors involving the officer's motives, intent, or propensities are not relevant.

Rowland v. Perry, 41 F.3d 167, 172-73 (4th Cir. 1994) (internal citations omitted). "[A] particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." Torchinsky, 942 F.2d at 261.

> "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." Mitchell, 472 U.S. at 526 . . . when there has been discovery and the defendants challenge through a motion for summary judgment the sufficiency of the plaintiff's evidence to support the allegations of his complaint, including his description of their conduct, an evaluation of the complaint's sufficiency is unnecessary and may unduly prolong the defendants' entanglement in litigation if the court can determine that the plaintiff's evidence does not support his allegations. In that circumstance, the familiar standard for summary judgment under Rule 56 applies.

Cloaninger, 555 F.3d at 331.

Taken in the most favorable light, Plaintiffs' allegations contend that various Defendant officers conducted an illegal search and seizure, unlawful arrest, and deprived Plaintiff of due process. The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), as modified by Pearson v. Callahan, 129 S.Ct. 808 (2009), provides that two questions must be asked to determine whether qualified immunity protects an official: first, whether the facts alleged show the officer's conduct violated a constitutional right; and next, whether the right was clearly established. Saucier, 533 U.S. at 201.

> In Pearson, the Supreme Court clarified that the qualified-immunity analysis need not proceed in the sequence set forth in Saucier, and that "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs ... should be addressed first in light of the circumstances in the particular case at hand." Thus, defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question in the two-prong analysis is "no."

Bostic v. Rodriguez, 667 F.Supp.2d 591, 606 (E.D.N.C. 2009) (quoting Pearson, 129 S.Ct. at 818).

For the clearly established right prong, it

> must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Id. (citing Saucier, 533 U.S. at 202). "Ordinarily, no factual findings are necessary to the analysis of a qualified immunity claim because the 'issue is purely a legal one: whether the facts alleged . . . support a claim of violation of clearly established law.'" Cloaninger, 555 F.3d at 331 (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)).

The Fourth Circuit has held that "[t]here is no question that when the historical facts are undisputed, whether a reasonable officer should have known of the illegality of his conduct is a question of law for the court" and that "the legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court, not by the jury." Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005).

> It is clearly established under the Fourth Amendment that individuals have the right to be free from unlawful seizures of their persons, including unlawful arrests. A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense. . . . (in order to be entitled to qualified immunity, defendants need only show that they had reasonable suspicion, based on the information known to them at the time, to give

> rise to the arrest). An officer's decision that probable cause is present
> is reviewed under a totality of the circumstances test.

Bell v. Dawson, 144 F.Supp.2d 454, 460 (W.D.N.C. 2001) (internal citations omitted).

Based on the totality of the circumstances, as described in the Barron affidavit and incident report, and as further supported by other affidavits and reports filed by Defendants (Document Nos. 23-2, 23-3), it is clear that Defendants had grounds for a reasonable suspicion of illegal activity at Club Deep on January 22, 2005, and probable cause to proceed with their search, seizure and arrest(s) on that date. "In the criminal arrest context, probable cause exists where 'the facts and circumstances with [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Plaintiff] had committed or was committing an offense." Cloaninger, 555 F.3d at 334 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

The undersigned finds Detective Barron's affidavit (Document 23-2, pp.17-21) and incident report (Document No. 23-2, pp. 28-30) persuasive on the issue of probable cause. Barron's affidavit reveals he became aware in mid-January 2005 that a musical event was to be held at 421 East Sugar Creek Road, a location he knew as Club Deep, operated by Hubbard. (Document No. 23-2, p.18). Barron made contact with Mecklenburg County ABC Chief Bill Cox and determined that there was no permit for that location, and that it was not anticipated that one would issue by January 22nd. Id. Apparently, between January 18th and January 22nd, Barron had additional conversations with parties involved in the musical event scheduled for Club Deep. Barron's affidavit reflects that Hubbard and other interested parties were informed that the proper permits had not been obtained, that they made some attempts to procure the permits, but that as of January 22nd Barron was not aware of any permits issued by the ABC Commission or a dance hall permit from the City of Charlotte. (Document No. 23-2, p.19).

The investigation by Barron and others provided trustworthy information indicating that Plaintiffs lacked the requisite permits and led directly to the officers' valid conduct. Even taking the facts in the light most favorable to Plaintiffs, including for instance that Barron had been notified that Hubbard was "under the regulation of N.C.G.S. § 18B," the officers' actions were not objectively unreasonable. Moreover, consistent with Saucier and Pearson, the undersigned does not find that a reasonable officer would view the conduct complained of as violating a constitutional right. To the contrary, the investigation, the search warrant obtained, and the admission by Hubbard that he did not hold valid permits - all would inform the reasonable officer that the actions taken by CMPD Defendants were proper and lawful, and thus not in violation of clearly established rights.

The Court can find no support for an argument that Plaintiffs were somehow exempt or excluded from requirements to obtain the necessary permits under the North Carolina statutes or city ordinances. Plaintiff's own Exhibit A, a letter from the ABC Commission, clearly states that on January 22, 2005, Hubbard was considered an *applicant* for an ABC permit and was "subject to all applicable ABC rules and laws." (Document No. 1, p. 29). Plaintiffs have cited no authority, and the undersigned is aware of none, that supports the position that an applicant for a permit would have the same rights and privileges as the holder of a permit. Even accepting as true that Plaintiffs' status with the ABC Commission somehow exempted Plaintiffs from the dance hall permit requirement, the undersigned does not find that Plaintiffs have presented sufficient evidence to counter Barron's sworn affidavit, and thereby to persuade the Court that Defendants were aware of such status and therefore lacked probable cause for their actions on January 22, 2005. (Document No. 23-2, pp.17-21).

Considering the uncontroverted evidence, Defendants had good reason to believe that Club Deep and Hubbard were operating illegally pursuant to relevant ABC laws and/or the city's dance hall ordinance, and had sufficient probable cause to conduct the search, seizure and arrest challenged

17

by the instant lawsuit. Furthermore, to the extent Plaintiffs allege violation of due process rights pursuant to § 1983, the undersigned concludes that Defendants' actions were reasonable and appropriate. The facts as alleged fail to support a violation of clearly established law and the CMPD Defendants are entitled to qualified immunity from the Plaintiffs' § 1983 claims.

**C. State Law Claims**

The remaining claims are brought under state law and require a different analysis from qualified immunity against claims brought under § 1983 alleging violation of federal rights. Cloaninger, 555 F.3d at 335 (citing Andrews v. Crump, 144 N.C.App. 68, 76 (2001)). The state law claims presented are for false arrest, false imprisonment, assault and battery, malicious prosecution and conversion.

After careful consideration, the Court will decline to rule, pursuant to 28 U.S.C. 1367(c), on the remaining state law claims and instead order that those claims be dismissed without prejudice.

> When a case contains federal claims as well as state claims over which the court has supplemental jurisdiction, the court "may decline to exercise supplemental jurisdiction over [the state claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Dismissal of the state claims should be without prejudice. . . .
>
> Since summary judgment is granted as to Plaintiffs' § 1983 claims, which are the only claims over which this court has original jurisdiction, it is appropriate to dismiss Plaintiffs' state law claims without prejudice. No basis for diversity jurisdiction appears, since all parties are alleged by Plaintiffs to be North Carolina residents. The remaining state law claims do not involve issues of federal policy.

Andrews v. Crump, 5:94CV101, 984 F.Supp. 393, 416 (W.D.N.C. 1996)(internal citations omitted); see also, Arrington v. City of Raleigh, No. 09-1207, 2010 WL 750085 at *3 (4th Cir. 2010)(citing Waybright v. Frederick County, MD, 528 F.3d 199, 209 (4th Cir. 2008)(our precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal

question jurisdiction under circumstances such as those reflected here . . . "With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so.")).

> Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.

Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)(internal citations omitted).

Although Plaintiffs' federal and state claims stem from the same nucleus of facts, the undersigned finds that state law claims predominate and the interests of justice and judicial economy are better served by allowing the state court to determine the state law claims.

> When choosing not to exercise pendent jurisdiction, the Court should also carefully consider the ramifications for dismissing or remanding the pendent state claims. For example,
>
>> a remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. In such a case, a dismissal will foreclose the plaintiff from litigating his claims. This consequence may work injustice to the plaintiff: although he has brought his suit in timely manner, he is time barred from pressing his case.

Adams v. Village of Wesley Chapel, 3:03-CV-411-RJC, 2006 WL 2689376 (W.D.N.C. 2006) quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351-52 (1988). This Court will therefore exercise its discretion to dismiss the state law claims without prejudice and remand those claims to the Superior Court of Mecklenburg County.

### IV. CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiffs have not met their burden of convincing the Court that any triable issues exist on their § 1983 claims. Summary judgment for Defendants is therefore appropriate on the federal issues before the Court. The state law claims will be dismissed without prejudice and remanded to state court.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant City of Charlotte's "Second (Supplemental) Motion For Summary Judgment" (Document No. 37) and "Defendants Barron, Mack, Smathers, and Levins' Second Motion For Summary Judgment" (Document No. 38) are **GRANTED** as to Plaintiffs' claims arising under 42 U.S.C. § 1983 (Counts One and Two); and

2. Plaintiffs' claims arising under state law (Counts Three, Four, Five, Six and Seven), are **DISMISSED WITHOUT PREJUDICE** and **REMANDED** to the State of North Carolina General Court of Justice, Mecklenburg County, Superior Court Division, Case Number 07-CVS-20617.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees in this action is **DENIED**.

**SO ORDERED**.

Signed: October 5, 2010

David C. Keesler
United States Magistrate Judge